

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| LONG JOHN SILVER'S RESTAURANTS, INC. and LONG JOHN SILVER'S, INC., | § § § |
| Movants, | § § |
| v. | § CIVIL ACTION NO. 6:05-3039-HFF § |
| ERIN COLE, NICK KAUFMAN, and VICTORIA MCWHORTER, | § § § |
| Respondents. | § § |

## MEMORANDUM OPINION AND ORDER

**I.      INTRODUCTION**

This is an action to vacate a class determination award of an arbitrator who determined that Respondents would be representative plaintiffs of an opt-out class. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Currently pending before the Court is Movants' motion to vacate the arbitrator's decision. For the reasons stated below, the Court will deny the motion.

**II.     FACTUAL AND PROCEDURAL HISTORY**

Respondent Erin Cole, Respondent Nick Kaufman, and Respondent Victoria McWhorter (collectively "Respondents") are former employees of Movant Long John Silver's Restaurants, Inc. and Movant Long John Silver's, Inc. (collectively "Movants"). During the tenure of Respondents' employment, Movants instituted a mandatory arbitration procedure covering certain disputes

between themselves and their employees. Subsequently, on December 19, 2003, Respondents initiated a collective arbitration proceeding before the American Arbitration Association (AAA) in which they alleged that Movants had violated the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.*, by failing to pay Respondents and similarly-situated employees overtime pay which they were due. Initially, the arbitrator necessarily conducted a "clause construction hearing" in which he determined that the arbitration agreement between Movants and Respondents permits Respondents to bring their claims in a class proceeding. Movants, arguing that FLSA §16(b)'s provisions permitting employees to bring collective actions are procedural and waivable, asked this Court to vacate the arbitrator's clause construction award. The Court, however, dismissed the action for lack of jurisdiction. *Cole v. Long John Silvers Restaurants, Inc.*, 388 F.Supp.2d 644 (D.S.C. 2005).

While Movants' motion to vacate the arbitrator's clause construction award was pending before the Court, the arbitrator issued a class determination partial final award in which he determined that Respondents would be representative plaintiffs in an opt-out class which would be composed of current and former employees of Movants who have potential FLSA claims. Movants now bring this action requesting that the Court vacate the arbitrator's decision to certify an opt-out class.

**III.    STANDARD OF REVIEW**

It is well settled that a court's review of an arbitration award "is among the narrowest known to the law." *United States Postal Service v. Am. Postal Workers Union*, *AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (internal quotation marks omitted). "A court sits to 'determine only whether the

2

arbitrator did his job–not whether he did it well, correctly, or reasonably, but simply whether he did it.'" *Id.* (quoting *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paper-Workers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Thus, the Court's review of the arbitrator's decision to certify an opt-out class is extremely narrow in scope.[1]

**IV.    DISCUSSION**

Movants assert two bases in support of their motion to vacate the arbitrator's class determination award. First, Movants contend that the arbitrator acted in manifest disregard of the law and, second, Movants claim that the arbitrator exceeded the scope of his authority. The Court finds that neither argument supports vacatur.

    **A.    Manifest Disregard of the Law**

A court's authority to vacate actions of an arbitrator which are in manifest disregard of the law is clearly established. *E.g., Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998); *Gallus Invs., L.P. v. Pudgie's Famous Chicken, Ltd.*, 134 F.3d 231, 233-34 (4th Cir. 1998). In exercising this authority, however, a court must proceed cautiously, as a "court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994). Instead, a court may vacate an award only

---

[1] The Court finds no basis in the law for Movants' suggestion that the Court review the arbitrator's award under a more rigorous standard, and the Court declines to undertake such a review here.

where a party has shown "that the arbitrator[] [was] aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision. *Id.* (citing *National Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir. 1993); *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111-12 (2d Cir. 1993)). Persuasive authority also indicates that a court's authority to vacate is contingent upon the law allegedly ignored bearing the status of a clearly established governing principle. *See, e.g., Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) (noting that in order to vacate a court must find that "the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 197, 202 (6th Cir. 1995) ("[A]n arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle[.]"); *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir. 1992) ("[T]here must be something beyond and different from mere error in law or failure on the part of the arbitrators to understand or apply the law; it must be demonstrated that the majority of the arbitrators deliberately disregarded what they knew to be the law in order to reach the result they did[.]"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933-34 (2d Cir. 1986) ("The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly established governing legal principle but decides to ignore or pay no attention to it.").

In the instant case, Movants contend that FLSA § 16(b) requires that collective actions brought under the Act be certified using opt-in class procedures. Movants base this contention on

the following language from § 16(b):

> An action to recover [under the Act] may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

In Movants' view, this section of the FLSA provides employees with a substantive right to consent to any action filed on their behalf under the Act. This right, Movants maintain, cannot be waived in an arbitration agreement and, thus, continues to apply with full force in private arbitration proceedings.

This language cannot bear the import that Movants assign to it. As an initial matter, Movants fail to present–and the Court fails to find–any authority for the proposition that the "consent in writing" requirement applies in arbitration proceedings. This absence of authority, taken alone, weakens Movants' argument that the arbitrator disregarded a clear governing principle of law. In addition, the language of the FLSA itself lacks the clarity which Movants would read into it. While § 16(b) does mandate the use of an opt-in procedure in class actions, it speaks of those actions and the written consent of class members being filed in "court[s] of competent jurisdiction." Although the statutory reference to "court[s]" does not entirely foreclose the possibility that the statute's requirements might apply in arbitration, it supplies uncertainty to the question of whether Congress intended the consent in writing requirement to govern arbitration proceedings as well as actions in court. In the face of the uncertainty of the statute's reach and the lack of interpretative authority on point, the Court cannot say that a clear principle of law bound the arbitrator in this case.

Even if FLSA § 16(b) qualifies as a clearly established principle requiring the use of opt-in classes in arbitration, the arbitrator did not disregard or ignore the statute in making his class determination award. Indeed, the arbitrator explicitly referred to § 16(b) in his award and balanced Movants' argument that the statute requires an opt-in class against Respondents' position that the arbitration agreement incorporates AAA rules providing for an opt-out class. (Mov. Mem. Supp. M. Vac. Ex. 1 at 4-11.) Further, the arbitrator specifically noted Movants' argument that the consent in writing requirement is a substantive right and referenced Supreme Court precedent which reconciles the need to preserve substantive statutory rights with the necessity that parties be held to their agreements to arbitrate. *Id.* at 8 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). The arbitrator then went on to find that Congress had not "evinced an intention to preclude a waiver" of the judicial remedies and procedures provided in § 16(b) (as is required before those remedies become non-waivable in arbitration). *Id.* Then, he analyzed the "salutary objectives" of the FLSA and to note that the FLSA permits states and localities to adopt higher standards than the federal standards of the Act. *Id.* at 9. The arbitrator also found instructive the Federal Arbitration Act's (FAA) preference for procedural rules adopted by the parties to an arbitration agreement. *Id.* Finally, the arbitrator noted that Movants' earlier attempt to classify as procedural and waivable that portion of § 16(b) which provides for collective actions weakens Movants' argument that § 16(b)'s written consent requirement is substantive and non-waivable. *Id.* at 10-11. After conducting this analysis, the arbitrator ruled that the class opt-in procedures of § 16(b) do not apply in private arbitration proceedings when the arbitration agreement and AAA rules provide for an opt-out class.

In sum, the arbitrator rendered a reasoned award which, far from ignoring the applicability of the FLSA, thoroughly analyzed the relationship of FLSA § 16(b) and the arbitration agreement. That the Court may have reached a different conclusion–or even that the arbitrator may have made a serious error of law–is of no consequence. *Remmey*, 32 F.3d at 149 (noting that vacatur is not justified by a court's belief that an arbitrator misapplied the law); *Upshur Coals Corp. v. United Mine Workers District 31*, 933 F.2d 225, 229 (4th Cir. 1991) ("An arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning, or erroneous legal conclusion.") (internal quotation marks omitted); 1 *Domke on Comm. Arb.* § 38:9 (2002) ("An arbitration award will not be overturned for manifest disregard of the law even where the arbitrator makes a serious error in his understanding of the law or in applying the law."). Movants and Respondents had a full and fair opportunity to present their competing views of the relevance of FLSA § 16(b) to the arbitration proceedings. The arbitrator, faced with "substantial conflicting" interpretations of the FLSA "which could support a decision for either of the parties," rendered his award. *Remmey*, 32 F.3d at 150. As a result, the Court "cannot simply assume that [he] ignored the law in reaching [his] conclusions." *Id.*; *see also Mountaineer Gas*, 76 F.3d at 608.

### B.    Scope of Arbitrator's Authority

Movants next contend that the arbitral award should be vacated because the arbitrator exceeded the scope of his powers in rendering the award. Although the FAA provides courts with the authority to vacate an award on this ground, 9 U.S.C. § 10(a)(4), the courts exercise that authority in a limited fashion. Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," courts should refrain from vacating his decision. *Am. Postal Workers Union*, 204 F.3d at 527. Moreover, the Court of Appeals has

emphasized that courts should vacate an arbitrator's decision as exceeding the scope of his authority only when the arbitrator "dispense[s] his own brand of industrial justice[,]" *id.* (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)), "ignores the unambiguous language [of the contract] chosen by the parties," *id.* (citing *Mountaineer Gas*, 76 F.3d at 610), or "base[s] his award on his own personal notions of right and wrong," *Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.*, 29 F.3d 126, 129 (4th Cir. 1994) (citing *Upshur Coals*, 933 F.2d at 229).

Here, Movants assert that the arbitrator exceeded his powers by certifying an opt-out class despite language in the arbitration agreement which provides that an employee is entitled to "anything [he] might seek through a court of law" and that the arbitrator "shall apply the substantive law . . . in the state in which the claim arose, or federal law, or both . . . ." (Mov. Mem. Supp. M. Vac. 19.) Movants also contend that the arbitrator ignored an AAA rule which requires the arbitrator to "consider . . . any law . . . the arbitrator determines applies to the arbitration." *Id.* Thus, Movants argue, in ignoring these provisions of the arbitration agreement, the arbitrator rewrote the agreement and exceeded his authority.

The Court finds this argument unpersuasive. The arbitrator's decision to certify an opt-out class was essentially a matter of contract interpretation. As the arbitrator noted:

> The issue is whether the agreement of the parties which incorporates the Supplementary [AAA] Rules dictates an opt-out procedure pursuant to the Rule 23 model or whether Plaintiffs' reliance upon the substantive provisions of the FLSA compels adherence to FLSA procedural rules, particularly the opt-in provisions of rule 16(b).

(Mov. Mem. Supp. M. Vac. Ex. 1 at 5.) The arbitrator further emphasized that he was merely interpreting the parties' arbitration agreement when he framed the question before him as "whether

8

the parties' contract has superseded the FLSA's procedural requirements." *Id.* at 6.

The arbitrator was certainly correct in this view of his role in the instant dispute. Far from ignoring any unambiguous language of the arbitration agreement mandating the certification of an opt-in class based on § 16(b)'s requirements, the arbitrator was forced to interpret the agreement *because of* its ambiguity as to whether § 16(b) or the AAA rules would apply to class certification. In doing so, the arbitrator did not dispense his own brand of justice but simply determined that the parties' agreement favored the use of an opt-out class under the AAA rules rather than an opt-in class under § 16(b). Nor did the arbitrator create a new remedy for Respondents, as Movants suggest. Instead, the arbitrator did what he was supposed to do: he analyzed two conflicting interpretations of the arbitration agreement and made a reasoned decision as to why an opt-out class should be certified.

Movants' suggestion that the arbitrator exceeded the scope of his authority by injecting his own personal notions of right and wrong into the adjudicative process must also be rejected. Despite his statement that "[e]quity is better served" by certifying an opt-out class, (Mov. Mem. Supp. M. Vac. Ex. 1 at 11), the arbitrator did not exceed the bounds of his authority under the arbitration agreement. First, the arbitrator's reference to "equity" implies that he invoked equitable principles developed in caselaw (an implication which is supported by the arbitrator's citation to authority in support of his use of equity) rather than any personal view of right and wrong.[2] Second, the arbitration agreement undoubtedly gave the arbitrator authority to invoke equity, as it provided him with the power to award any relief which a court could award. The arbitrator, therefore, acted–or

---

[2] The arbitrator's reference to "fairness, efficiency, and due process," (Mov. Mem. Supp. M. Vac. Ex. 1 at 9), also indicates that, in using the term "equity," he referred to more than mere personal belief in a just result.

9

at least arguably acted–within the scope of his authority when he noted that equity supports the certification of an opt-out class.

Finally, even if Respondents have–at the very most–raised an arguable issue as to whether the arbitrator exceeded the scope of his powers, the Court is without authority to vacate the arbitrator's decision. *Am. Postal Workers Union*, 204 F.3d at 527 (holding that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court should not vacate his decision). Therefore, the Court cannot say that the arbitrator exceeded the scope of his authority.[3]

## V. CONCLUSION

Based on the foregoing, and after a thorough review of the record and the relevant law, the Court concludes that the motion to vacate the arbitrator's class determination award must be, and hereby is, **DENIED**. All other pending motions are hereby rendered **MOOT**.

**IT IS SO ORDERED.**

Signed this 20th day of January, 2006, in Spartanburg, South Carolina.

---

[3] The Court also rejects Movants' argument that the arbitrator exceeded the scope of his powers by applying the stay and tolling agreement entered in *Johnson v. Long John Silver's Restaurants, Inc.*, 320 F.Supp.2d 656 (M.D. Tenn. 2004). In essence, Movants maintain that the arbitrator exceeded the scope of his authority by applying the wrong statute of limitations to the instant case. A legal or interpretative error by the arbitrator, however, does not equate to an expansion of his powers beyond those delegated to him in the arbitration agreement. The issue of the applicability of the *Johnson* stay to the present arbitration proceedings was clearly before the arbitrator, as Movants themselves requested a ruling on this issue. Thus, the arbitrator's ruling that the *Johnson* tolling agreement applied here clearly fell within the scope of his authority.

                                                s/ Henry F. Floyd
                                                HENRY F. FLOYD
                                                UNITED STATES DISTRICT JUDGE